UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF

OKLAHOMA

Case No. ____________

26 CV - 568 JFH - JFJ

**COMPLAINT**

1 **SITARA ELOHIM,**

**Plaintiff,**

**JURY TRIAL DEMANDED**

FILED

SEP 14 2026

Bonnie N. Hackler, Acting Clerk
U.S DISTRICT COURT

**v.**

2 **EMPLOYMENT SOLUTIONS MANAGEMENT,**

**INC.**

**d/b/a ProDrivers,**

**Defendant.**

## COMPLAINT

Plaintiff Sitara Elohim ("Plaintiff"), appearing pro se, brings this action against Defendant Employment Solutions Management, Inc. d/b/a ProDrivers ("Defendant") for violations of Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act of 1990 ("ADA"), and 42 U.S.C. § 1981. Plaintiff alleges as follows:

## I. NATURE OF THE ACTION

1. This is an employment-discrimination and retaliation action arising from Plaintiff's employment as a Business Development Manager for Defendant in Tulsa, Oklahoma, from November 24, 2025 through April 28, 2026.



- fee pd
- 1 summons

Plaintiff is a Black American woman and a lesbian. Plaintiff is also an individual with disabilities, including ADHD and fibromyalgia, and has experienced chronic migraine symptoms and related functional limitations.

3. During her employment, Plaintiff experienced repeated discriminatory and retaliatory conduct in the Tulsa branch, including racialized conduct, sex- and sexual-orientation-based conduct, religiously charged conduct, disability-related treatment, interference with Plaintiff's ability to perform her sales job, and retaliation after Plaintiff complained about discrimination and sought accommodation.

4. Plaintiff repeatedly attempted to resolve these matters internally and sought reasonable means of remaining employed. Plaintiff alleges that Defendant's response escalated rather than resolved the problems.

5. Plaintiff filed EEOC Charge No. 564-2026-01373. The charge identified Color, Disability, Race, Religion, Retaliation, and Sex as bases of discrimination and expressly alleged discrimination and retaliation based on race, color, sex, sexual orientation, religion, and disability. The EEOC issued a Determination and Notice of Rights on June 17, 2026. The EEOC did not make a merits determination. Plaintiff files this action within the applicable 90-day period.

6. Defendant initially maintained an arbitration agreement with Plaintiff. After Plaintiff notified Defendant of her intent to proceed in court, Defendant, through in-house counsel Andrea D. Rose and outside counsel Kathryn D. Terry of Phillips Murrah P.C., expressly waived enforcement of the arbitration provision and confirmed in writing that Plaintiff could proceed in court.

## II. JURISDICTION AND VENUE

7. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under Title VII, the ADA, and 42 U.S.C. § 1981.

8. This Court has jurisdiction over Plaintiff's Title VII claims under 42 U.S.C. § 2000e-5(f)(3) and over Plaintiff's ADA claims under 42 U.S.C. § 12117(a) and 28 U.S.C. § 1331.

9. Venue is proper in this District under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in Tulsa, Oklahoma, and Defendant employed Plaintiff in this District.

10. Plaintiff demands a jury trial on all issues so triable.

## III. PARTIES

11. Plaintiff Sitara Elohim is an individual residing in Tulsa, Oklahoma. Her mailing address is 8217 S. Yale Ave., Apt. 338, Tulsa, Oklahoma 74137. Plaintiff is proceeding without counsel.

12. Defendant Employment Solutions Management, Inc. was Plaintiff's employer. Plaintiff worked for Defendant under the ProDrivers brand in Tulsa, Oklahoma. Defendant is an EmployBridge-related entity.

13. Defendant may be served through its registered agent or other authorized agent for service of process. Plaintiff will use the service information confirmed by the Clerk and applicable Oklahoma records when service is made.

## IV. ADMINISTRATIVE EXHAUSTION AND TIMELINESS

14. Plaintiff timely pursued administrative remedies with the EEOC under Charge No. 564-2026-01373.

15. The EEOC Charge was signed June 4, 2026 and identified Color, Disability, Race, Religion, Retaliation, and Sex as bases of discrimination. The narrative alleged discriminatory

and retaliatory conduct and specifically identified race, color, sex, sexual orientation, religion, and disability.

16. The EEOC issued its Determination and Notice of Rights on June 17, 2026. The notice states that the EEOC would not proceed further and made no determination about whether further investigation would establish statutory violations.

17. Plaintiff received the Notice of Right to Sue on June 17, 2026. Plaintiff files this Complaint on September 14, 2026, within 90 days of the notice.

## V. PLAINTIFF'S EMPLOYMENT AND PERFORMANCE

18. Defendant hired Plaintiff as a Business Development Manager effective November 24, 2025, in Tulsa, Oklahoma.

19. Plaintiff's position was revenue-generating and required prospecting, client development, pipeline management, job-order generation, client follow-up, coordination with operations and recruiting, and performance against established sales metrics.

20. Plaintiff had more than two decades of professional experience in business development, client engagement, staffing/workforce solutions, executive relationships, and consultative sales.

21. Plaintiff's initial employment period was devoted substantially to training, shadowing, market development, and prospecting preparation. Plaintiff also traveled to Arizona for ProDrivers-specific field training and shadowed senior Business Development Manager Matt Navarez.

22. Dedicated sales activity began in early February 2026. Within approximately five weeks, Plaintiff generated approximately nine job orders, many involving multiple drivers, averaging approximately two orders per week during the relevant period.

23. On March 24, 2026, Plaintiff participated in a companywide sales blitz and tied for top performance.

24. Plaintiff's direct supervisor, David Earnshaw, also told Plaintiff during the February 9, 2026 period that her performance was meeting or exceeding expectations.

## VI. DISCRIMINATORY AND HOSTILE CONDUCT

25. Plaintiff was a Black employee working in the Tulsa ProDrivers office. Branch Manager and Tulsa Market Leader Kandice McCuistian and In-Branch Recruiter Jennifer Johnson-Brake were White women.

26. McCuistian repeatedly made comments about hunting, weapons, killing deer, shot placement, blood, and the physical handling of dead animals. During one early interaction, she described a deer weighing approximately 180–200 pounds and physically gestured to indicate its size in relation to Plaintiff's body.

27. Plaintiff experienced these repeated references, particularly when coupled with physical sizing gestures and other conduct directed toward her, as racialized, intimidating, and demeaning.

28. McCuistian and Johnson-Brake repeatedly commented on Plaintiff's hair and appearance, including asking whether Plaintiff would "do" her hair when she went home. Plaintiff experienced these comments as racialized scrutiny of her natural hair texture and appearance.

29. McCuistian repeatedly characterized Plaintiff's positive demeanor as "fake" and mocked or demeaned Plaintiff's professional manner.

30. During February 2026, the word "slave" was repeatedly used around Plaintiff in connection with work assignments. McCuistian and/or Johnson-Brake made statements such as

"I don't want you to feel like a slave" while continuing to assign Plaintiff work outside her role, including duties belonging to management or recruiting. Plaintiff experienced the repetition and context as racially degrading.

31. Plaintiff also experienced conduct she understood as racialized mockery, including "whipping" sounds and related conduct after workplace conflict and after Plaintiff began reporting concerns.

32. On March 6, 2026, while a visiting employee was present, McCuistian mocked Plaintiff's sexual orientation and gender presentation by adopting an exaggerated masculine posture and voice and making statements including "huhhuh, I like girls" and "I get all the ladies." Plaintiff experienced this conduct as public humiliation based on her identity as a lesbian woman.

33. At a December 2025 lunch at Chick-fil-A, McCuistian questioned Plaintiff concerning her beliefs and made comments Plaintiff understood as treating Christianity as a normative or superior moral framework.

34. The conduct described above occurred across Plaintiff's employment and was accompanied by work obstruction, public humiliation, exclusion, intimidation, and adverse treatment.

## VII. JOB-ORDER INTERFERENCE AND ECONOMIC HARM

35. Plaintiff's position depended on generating legitimate business opportunities and converting those opportunities into job orders. Plaintiff's compensation and performance structure included incentives tied to revenue generation, client development, and continued account growth.

36. Plaintiff generated legitimate client opportunities and job orders involving, among others, Industrial Oil, Seal Master, and Hesselbein Tire.

37. Plaintiff was expected to maintain client relationships after orders were placed and to document appropriate outreach in Salesforce.

38. McCuistian repeatedly instructed Plaintiff not to contact clients whom Plaintiff had acquired after Plaintiff submitted job orders, despite continued client follow-up being part of Plaintiff's business-development responsibilities.

39. McCuistian also restricted Plaintiff from contacting available or "sitting" drivers and failed to provide or support Driver Hot Sheets that Plaintiff understood were intended to help Business Development Managers place available drivers.

40. Plaintiff raised these operational barriers with management and Human Resources. Plaintiff alleges that the barriers impaired her ability to generate and maintain business opportunities and that management later treated resulting pipeline issues as performance deficiencies.

41. After Plaintiff engaged in protected activity, several legitimate job orders were allegedly closed, abandoned, reassigned, or otherwise failed to progress. Plaintiff was accused of creating "fake job orders" and inflating her pipeline despite contemporaneous client communications and records supporting the legitimacy of the opportunities.

42. Plaintiff alleges that this conduct interfered with commissions, performance credit, bonuses, future business, pipeline value, and her ability to demonstrate successful performance, and that the timing supports an inference of retaliatory motive.

## VIII. PROTECTED ACTIVITY AND RETALIATION

43. Plaintiff engaged in protected activity by opposing and reporting discrimination and harassment, raising concerns about race and other protected characteristics, reporting disability-related concerns, and making formal complaints to Human Resources and management.

44. On February 11, 2026, during an escalating confrontation with McCuistian, Plaintiff directly asked whether McCuistian's treatment of her was because Plaintiff was Black. Plaintiff thereafter reported the confrontation to her supervisory chain.

45. On February 19, 2026, Plaintiff made a formal complaint to Human Resources concerning discriminatory and retaliatory treatment.

46. On February 25, 2026, Plaintiff provided further notice concerning continuing workplace harm and requested a safety-related accommodation.

47. Plaintiff continued reporting discriminatory and retaliatory conduct during February and March 2026. Human Resources acknowledged and investigated Plaintiff's complaints, but Plaintiff alleges that the investigations did not stop the conduct.

48. On March 6, 2026, Plaintiff informed ProDrivers President Ken Frith during a one-on-one meeting that she had an active EEOC-related matter and an HR complaint. Plaintiff thereafter continued reporting concerns to management and Human Resources.

49. On March 26, 2026, Plaintiff made a further report concerning continued retaliation, job-order interference, and interference with her sales pipeline. Defendant again closed its investigation without providing a meaningful resolution.

50. After Plaintiff's protected complaints, Plaintiff experienced increased scrutiny, restrictions on client contact, interference with business opportunities, accusations concerning her pipeline, pressure concerning her accommodation, and ultimately termination.

51. The close temporal sequence between Plaintiff's protected complaints beginning in February 2026, the subsequent adverse treatment, and the April 28 termination, together with Defendant's knowledge of the complaints and Plaintiff's allegations concerning inconsistent treatment, supports a reasonable inference of retaliatory motive.

## IX. SAFETY ACCOMMODATION AND REMOTE WORK

52. On February 18, 2026, Plaintiff's vehicle was vandalized while she was working at or associated with the Tulsa workplace. Plaintiff reported the incident to the Tulsa Police Department under Case No. 2026302312.

53. In the context of the escalating workplace conduct, Plaintiff perceived the vandalism as a serious safety concern and requested a workplace safety accommodation that included working remotely.

54. Defendant ultimately permitted Plaintiff to work remotely, but management treated the arrangement as temporary and repeatedly emphasized that remote work was a "huge deal" and that management was disappointed by it.

55. Plaintiff's remote work did not prevent her from performing the essential functions of her position. Plaintiff continued generating business and performed strongly during the March 24, 2026 companywide sales blitz.

56. On March 6, 2026, Plaintiff was required to report to the office for a visit by ProDrivers President Ken Frith despite her safety concerns. Plaintiff advised David Earnshaw that she did not feel safe and would need to park away from the office. She was told to "do what I have to do" to be present.

57. Plaintiff repeatedly proposed reasonable alternatives that would have allowed her to remain employed, including continued remote work, transfer to another market or EmployBridge

brand, and other internal opportunities for which she was qualified. Plaintiff consistently communicated that she wanted to remain employed.

58. Defendant did not meaningfully pursue those alternatives.

## X. MEDICAL LEAVE, ACCOMMODATION, AND TERMINATION

59. Plaintiff's medical condition worsened during the period of escalating workplace stress, and Plaintiff began short-term disability leave on or about April 10, 2026.

60. Plaintiff's medical provider supported continued leave through June 30, 2026.

61. On April 10, 2026, Defendant's Senior Leave of Absence Administrator, Lesley Inman, was involved in communications concerning Plaintiff's medically supported leave and accommodation.

62. On April 24, 2026, at approximately 2:03 p.m., Defendant was notified that Plaintiff was not medically fit to return to work as of April 27, 2026.

63. Approximately seventeen minutes later, at 2:20 p.m., Lesley Inman, Senior Leave of Absence Administrator, told Plaintiff that she would consult Plaintiff's management team to determine whether Defendant could accommodate Plaintiff's leave any longer based on "the needs of the business."

64. On April 28, 2026, at approximately 2:50 p.m., Lesley Inman asked Plaintiff to participate in a 3:30 p.m. call with Inman and People Business Partner Carrie Brown. During that call, Defendant terminated Plaintiff's employment. The April 28 call was Plaintiff's only termination notice; Defendant did not provide Plaintiff with a separate termination letter.

65. On April 29, 2026, Inman requested Plaintiff's mailing address so Defendant could send boxes for return of Plaintiff's computer and equipment. Later that day, Carrie Brown sent

Plaintiff a Separation and Release Agreement offering severance in exchange for a release of claims. Plaintiff did not sign the agreement.

66. The termination occurred immediately after Defendant learned that Plaintiff could not medically return on April 27 and immediately after management was asked to determine whether Plaintiff's leave could be accommodated further.

67. At the time of termination, Defendant knew of Plaintiff's disability-related limitations, medically supported leave, accommodation requests, and prior complaints concerning discrimination and retaliation.

68. Plaintiff alleges that Defendant failed to engage in a meaningful interactive process concerning continued leave or other reasonable accommodations and instead terminated Plaintiff while she remained on medically supported leave.

69. Plaintiff further alleges that the timing and circumstances of the termination support an inference that disability-related circumstances and Plaintiff's protected complaints were motivating factors in the decision.

## XI. RESULTING HARM AND DAMAGES

70. As a direct and proximate result of Defendant's conduct, Plaintiff suffered lost wages, lost employment benefits, lost commissions and performance opportunities, lost future earnings, professional harm, emotional distress, and other economic and non-economic damages.

71. Plaintiff seeks the remedies available under Title VII, the ADA, and 42 U.S.C. § 1981, including back pay, front pay or other equitable relief, compensatory damages, punitive damages where permitted, costs, and reasonable attorney's fees if authorized by law and if Plaintiff later obtains counsel.

## COUNT I — TITLE VII RACE AND COLOR DISCRIMINATION / HOSTILE WORK ENVIRONMENT

72. Plaintiff incorporates paragraphs 1–71.

73. Title VII prohibits discrimination because of race or color and protects employees from a workplace permeated with discriminatory intimidation, ridicule, or insult sufficiently severe or pervasive to alter the conditions of employment.

74. Plaintiff is Black and therefore belongs to protected racial and color classes.

75. Plaintiff was subjected to unwelcome conduct that she experienced as racial in nature or reasonably understood in context to be based on race or color, including repeated racialized language, "slave" references, racialized scrutiny of her hair and appearance, racialized mockery, and demeaning conduct involving animal and hunting imagery.

76. The conduct was repeated, involved supervisory personnel, occurred over the course of Plaintiff's employment, and was accompanied by interference with Plaintiff's work and professional standing.

77. Plaintiff alleges that Defendant knew or should have known of the conduct and failed to take reasonable steps to stop it, and that the conduct altered the conditions of Plaintiff's employment and caused damages.

## COUNT II — TITLE VII SEX / SEXUAL-ORIENTATION DISCRIMINATION

78. Plaintiff incorporates paragraphs 1–71.

79. Title VII prohibits discrimination because of sex, including discrimination because an individual is homosexual. See Bostock v. Clayton County, 590 U.S. 644 (2020).

80. Plaintiff is a woman and a lesbian and is protected from discrimination because of sex and sexual orientation.

81. Defendant, through supervisory personnel, subjected Plaintiff to humiliating and stereotyped conduct concerning her sexual orientation and gender presentation, including the March 6, 2026 public mocking described above.

82. Plaintiff alleges that this conduct was part of the broader discriminatory and adverse treatment she experienced and caused compensable harm.

**COUNT III — TITLE VII RELIGIOUS DISCRIMINATION**

83. Plaintiff incorporates paragraphs 1–71.

84. Title VII prohibits discrimination because of religion. 42 U.S.C. § 2000e-2(a)(1).

Plaintiff's religious beliefs and status are protected to the extent recognized by Title VII.

86. Plaintiff experienced workplace conduct that questioned her beliefs and treated Christianity as a normative or superior moral framework, including the December 2025 Chick-fil-A incident and related comments.

87. Plaintiff alleges that the religiously charged conduct contributed to the broader pattern of differential and hostile treatment and caused harm.

**COUNT IV — TITLE VII RETALIATION**

88. Plaintiff incorporates paragraphs 1–71.

89. Plaintiff engaged in protected activity by opposing and reporting discrimination, including raising race-related concerns directly with McCuistian and making formal complaints to Human Resources and management.

90. Defendant knew of Plaintiff's protected activity.

91. After Plaintiff engaged in protected activity, Defendant subjected her to materially adverse treatment, including interference with legitimate business opportunities, restrictions on

client contact, accusations concerning her sales pipeline, heightened scrutiny, adverse treatment concerning accommodation, and termination.

92. The timing, sequence, management knowledge, and surrounding circumstances support a causal connection between Plaintiff's protected activity and the adverse actions.

93. Plaintiff alleges that protected activity was a motivating factor in Defendant's challenged actions and that Defendant's conduct violated 42 U.S.C. § 2000e-3(a).

**COUNT V — ADA DISCRIMINATION AND FAILURE TO ACCOMMODATE**

94. Plaintiff incorporates paragraphs 1–71.

95. Plaintiff is a qualified individual with a disability within the meaning of the ADA.

96. Plaintiff could perform the essential functions of her Business Development Manager position, with or without reasonable accommodation.

97. Defendant knew of Plaintiff's disabilities and her need for medically supported leave and workplace accommodation.

98. Plaintiff requested and utilized reasonable accommodation, including remote work and medically supported leave, and repeatedly proposed additional reasonable alternatives that would allow her to remain employed safely.

99. Defendant did not meaningfully engage in an interactive process concerning continued leave or other reasonable accommodations and instead terminated Plaintiff immediately after being notified that she could not medically return on April 27 and while she remained on medically supported leave.

100. Defendant's conduct violated 42 U.S.C. § 12112(a) and § 12112(b)(5) and caused Plaintiff damages.

**COUNT VI — ADA RETALIATION**

101. Plaintiff incorporates paragraphs 1–71.

102. Plaintiff engaged in protected activity under the ADA by requesting accommodation, reporting disability-related concerns, seeking medically supported leave, and opposing conduct she reasonably believed interfered with her rights under the ADA.

103. Defendant knew of Plaintiff's protected activity.

104. Defendant thereafter subjected Plaintiff to adverse treatment concerning her accommodation and leave and ultimately terminated her employment while she remained on medically supported leave.

105. The close temporal relationship, management knowledge, and surrounding circumstances support a causal connection between Plaintiff's ADA-protected activity and the adverse actions.

106. Defendant's conduct violated 42 U.S.C. § 12203(a).

**COUNT VII — 42 U.S.C. § 1981 RACE DISCRIMINATION**

107. Plaintiff incorporates paragraphs 1–71.

108. Section 1981 protects the right of persons to make and enforce contracts without racial discrimination.

109. Plaintiff's employment relationship constituted a contractual relationship protected by § 1981.

110. Defendant intentionally discriminated against Plaintiff because she is Black in matters affecting the terms, conditions, privileges, and continuation of her employment, including discriminatory treatment, interference with the economic benefits of her work, and termination.

111. Plaintiff seeks the remedies available under § 1981 and applicable federal law.

## PRAYER FOR RELIEF

a. A declaration that Defendant violated Title VII, the ADA, and 42 U.S.C. § 1981;

b. Back pay and lost compensation, including lost wages, commissions, bonuses, benefits, and other employment compensation;

c. Front pay or other equitable relief in lieu of reinstatement if reinstatement is not appropriate;

d. Compensatory damages for emotional distress, humiliation, professional harm, and other compensable injury;

e. Punitive damages to the extent authorized by applicable federal law;

f. Appropriate equitable and injunctive relief preventing further discrimination and retaliation;

g. Prejudgment and post-judgment interest as allowed by law;

h. Costs of this action and reasonable attorney's fees if authorized by law; and

i. Any other relief the Court determines to be just and proper.

## JURY DEMAND

112. Plaintiff demands a trial by jury on all issues so triable.

## PRESERVATION OF EVIDENCE

113. Plaintiff requests that Defendant preserve potentially relevant documents and electronically stored information, including emails, Microsoft Teams messages, text messages, CRM records, job-order records, client communications, personnel records, leave and accommodation records, HR investigation materials, recordings, telephone records, surveillance footage, metadata, archived information, and other evidence relevant to the claims or defenses in this action.

Respectfully submitted,

**SITARA ELOHIM**

Plaintiff, pro se

8217 S. Yale Ave., Apt. 338

Tulsa, Oklahoma 74137

Telephone: 918-727-0307

Email: sitaraelohim@gmail.com

Dated: September 14, 2026

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Oklahoma City Area Office**
215 Dean A McGee Avenue, Suite 524
Oklahoma City, OK 73102
(405) 666-0360
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 06/17/2026

**To:** Ms. Sitara Elohim
8217 S Yale Ave Apt 338
TULSA, OK 74137
Charge No: 564-2026-01373

EEOC Representative and email: ROBERT MEDINA
EQUAL OPPORTUNITY INVESTIGATOR
ROBERT.MEDINA@EEOC.GOV

---

### DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 564-2026-01373.

On behalf of the Commission,

Digitally Signed By:Holly Waldron Cole
06/17/2026

Holly Waldron Cole
Area Office Director

**Cc:**
Samantha Kovalyak
EmployBridge
1845 Satellite Blvd. Suite 300
Duluth, GA 30097

Employbridge (ProDrivers)
9515 E 51st St Ste A
TULSA, OK 74145

Joan Korowitz
Employbridge
1845 Satellite Blvd. Suite 300
Duluth, GA 30097

Please retain this Notice for your records.

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court* ***under Federal law****. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* EEOC's official notice of dismissal**. You should **keep a record of the date you received EEOC's official notice of dismissal**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving EEOC's official notice of dismissal (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA, or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of your receipt of EEOC's official notice of dismissal and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of EEOC's official notice of dismissal, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a

FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 564-2026-01373 to the District Director at David Davis, 1222 Spruce St Rm 8 100, St Louis, MO 63103.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 564-2026-01373 to the District Director at David Davis, 1222 Spruce St Rm 8 100, St Louis, MO 63103.

You may request the charge file up to 90 days after receiving EEOC's official notice of dismissal. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

### "Actual" disability or a "record of" a disability

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.
- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
- **Only one** major life activity need be substantially limited.
- Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications)

**are not considered** in determining if the impairment substantially limits a major life activity.

- An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.
- An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.
- A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability."

***Note:*** *Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

EEOC No. 564-2026-01373 | FEPA No.

# CHARGE OF DISCRIMINATION

Form 5 (06/24)

This form is affected by the Privacy Act of 1974.
See attached Privacy Act Statement and other information before completing this form.

| **CHARGE PRESENTED TO:** | **AGENCY CHARGE NO.** |
|---|---|
| EEOC | 564-2026-01373 |
| Oklahoma Attorney General's Office, Office of CR Enforcement | |

Name *(indicate Mr., Ms., Mrs., Miss, Dr., Hon., Rev.)*: Ms. Sitara Elohim

Phone No.: 701-712-8683

Year of Birth: 1984

Mailing Address: 8217 S Yale Ave Apt 338

TULSA, OK 74137

Named below is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency that I believe discriminated against me or others.

Name: Employbridge (ProDrivers)

No. Employees, Members:

Phone No.: 919-414-7400

Mailing Address: 9515 E 51st St Ste A

TULSA, OK 74145, UNITED STATES OF AMERICA

Name:

No. Employees, Members:

Phone No.:

Mailing Address:

DISCRIMINATION BASED ON:

Color, Disability, Race, Religion, Retaliation, Sex

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: 11/25/2025

Latest: 04/13/2026

Continuing Action

THE PARTICULARS ARE:

I. I began my employment on November 24, 2025, as a Business Developer Manager. At all times, I performed my duties in a satisfactory manner. Since my hire I have been subjected to discriminatory conduct by Branch Manager Kandice McCuistan. Ms. McCuistan's differential treatment has been prevalent in the way she uses derogatory, racially charged, demeaning words and actions towards me. I have informed Human Resources representative Carrie Brown of the issue with Ms. McCuistan, to my knowledge nothing was done.

II. Subsequently, since April 10, 2026, I have been on short term disability.

III. I believe that I have been discriminated and retaliated against because of my race African American, color, Black, sex, Female, sexual orientation, religion, Christian, in violation of Title VII of the Civil Rights Act of 1964, as amended. I believe that I have been discriminated against because of my disability, in violation of the Americans with Disabilities Act of 1990, as amended.

EEOC No. 564-2026-01373 | FEPA No.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct, and that I have read each page of this form.

Digitally Signed By: Ms. Sitara Elohim
06/04/2026

Charging Party Signature & Date

If a state or local Fair Employment Practices Agency (FEPA) requires notarization, you may need to sign the charge in the presence of a notary. If so, please do so here.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information, and belief.

_______________________________

Notarized Signature of Charging Party

Subscribed and sworn to before me this date:

Signature of Notary_______________________________

Printed Name _______________________________

## CP ENCLOSURE WITH EEOC FORM 5 (06/24)

### PRIVACY ACT STATEMENT

Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (06/24).
2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.
3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.
4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.
5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so *within 15 days* of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA, Section 207(f) of GINA, and 42 USC 2000gg-2(f)(1) of the PWFA it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

Gmail

Ara E <sitaraelohim@gmail.com>

**RE: Allegations against ProDrivers**
1 message

**Terry, Kathryn D.** <kdterry@phillipsmurrah.com> Wed, Sep 2, 2026 at 1:37 PM
To: Andrea Rose <andrea.rose@employbridge.com>, Ara E <sitaraelohim@gmail.com>

Good afternoon, Ms. Elohim.

As Andrea has conveyed, should you wish to proceed further, the company is waiving any required arbitration provision, meaning you may file in court instead. Thank you,

Kathy Terry

Kathryn D. Terry

Director

Phillips Murrah P.C. | M: 405.235.4100 | F: 405.235.4133 | D: 405.552.2452

phillipsmurrah.com

**From:** Andrea Rose <andrea.rose@employbridge.com>
**Sent:** Wednesday, September 2, 2026 1:13 PM
**To:** Terry, Kathryn D. <kdterry@phillipsmurrah.com>; Ara E <sitaraelohim@gmail.com>
**Subject:** Allegations against ProDrivers

**CAUTION:** This email originated from outside Phillips Murrah's Email System. DO NOT CLICK on any links or open attachments unless you recognize the sender and know the content is safe.

Ms. Elohim –

I wanted to connect you with Kathryn Terry, the outside attorney that ProDrivers has retained to address your concerns about your employment with and separation from the company. With respect to your comments about arbitration, given the scope of your allegations and concerns, the company is happy to proceed in court instead of incurring any additional fees in arbitration.

Moving forward, please communicate directly with Ms. Terry.

Thank you,

Andrea

**Andrea D. Rose**

Senior Counsel

employbridge

O 864-686-4309

Greenville, SC

www.employbridge.com

**ProLogistix | ResourceMFG | Select | Hire Dynamics**

**ProDrivers | RemX | Remedy | Westaff | Bluecrew**